BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
ALEX TRAMONTANO (SBN 276666)_
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiffs and
the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT RIGAS and EVENCIO DIAZ, individually and on behalf of all others similarly situated, | Case No.: _____ |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | DEMAND FOR JURY TRIAL |
| CALIFORNIA PIZZA KITCHEN, INC., | |
| Defendant. | |

Plaintiffs Brett Rigas and Evencio Diaz ("Plaintiffs"), in their individual capacity and on behalf of all others similarly situated, bring this Class Action Complaint against California Pizza Kitchen, Inc. ("Defendant") and allege, upon personal knowledge as to their own actions and their counsels' investigation, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1.     Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard Personally Identifiable Information ("PII") of its employees and former employees, including (without limitation) names and Social Security Numbers.

2.     Plaintiffs also allege Defendant failed to provide timely, accurate, and adequate notice to Plaintiffs and similarly situated current and former employees ("Class Members") that their PII had been lost and precisely what type of information was unencrypted and is now in the possession of unknown third parties.

3.     Defendant is a restaurant chain company that operates more than 250 restaurants throughout 32 states and 10 foreign countries. Defendant's employees entrust them with an extensive amount of their PII. Defendant retains this information—even after the employment relationship ends.

4.     On or around September 15, 2021, Defendant "learned of a disruption to certain systems on our computing environment."[1] The hacker gained access to directories where PII was stored. "On October 4, 2021, the investigation confirmed that certain files on our systems had been subject to unauthorized access."[2]

5.     More than a month later, Defendant issued a "Notice of Data Breach," dated November 15, 2021, to those whose PII may have been impacted.

6.     By obtaining, collecting, using, and deriving a benefit from the PII of

---

[1]     https://oag.ca.gov/system/files/California%20Pizza%20Kitchen%20-%20Sample%20Notice.pdf (last visited Dec. 7, 2021).

[2]     *Id.*

Plaintiffs and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII that the attacker viewed and took included at least individuals' names, and Social Security numbers.

7.      Hackers can access and then offer for sale the PII to criminals. The exposed PII of Plaintiffs and Class Members can, and on information and belief, has been sold on the dark web. Plaintiffs and Class Members now face a present and lifetime risk of identity theft, which is heightened here by the loss of Social Security Numbers.

8.      This PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiffs and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited more than a month to report it to the states' Attorneys General and affected individuals. Defendant has not informed Plaintiffs or Class Members what the specific vulnerabilities and root causes of the breach are.

9.      As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.     Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

11.     Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII;

(ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

12.    Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiffs and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

13.    Plaintiff Brett Rigas is a resident and citizen of Florida. Defendant obtained and continues to maintain Plaintiff Rigas's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Rigas would not have entrusted his PII to Defendant, his former employer, had he known that it would fail to maintain adequate data security. Plaintiff Rigas's PII was compromised and disclosed as a result of the Data Breach.

14.    Plaintiff Evencio Diaz is a resident and citizen of Florida. Defendant obtained and continues to maintain Plaintiff Diaz's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Diaz

would not have entrusted his PII to Defendant, his former employer, had he known that it would fail to maintain adequate data security. Plaintiff Diaz's PII was compromised and disclosed as a result of the Data Breach.

15.    Defendant California Pizza Kitchen, Inc., is a Delaware corporation with its headquarters in Costa Mesa, California.

16.    All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III. JURISDICTION AND VENUE

17.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

18.    This court has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and conducts substantial business in this District.

19.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

*Background*

20.    Defendant is a very large restaurant chain, with more than 250 restaurants throughout the United States. Defendant has employed tens of thousands of people to operate and supply these restaurants. As of this writing, it has

approximately 14,000 employees.[3]

21.    Plaintiffs and Class Members employed by Defendant were required to provide Defendant with sensitive and confidential information, including their names and Social Security Numbers. In particular, Social Security Numbers are static, do not change, and can be used to commit countless different types of financial crimes.

22.    Plaintiffs and Class Members, as current and former employees of Defendant, relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiffs and Class Members demand security to safeguard their PII.

23.    Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiffs and Class Members from involuntary disclosure to third parties.

***The Data Breach***

24.    Beginning on or about November 15, 2021, Defendant sent Plaintiffs and other current and former employees a *Notice of Data Breach*. Defendant informed the recipients of the notice that:

**What Happened?**

On or about September 15, 2021, CPK learned of a disruption to certain systems on our computing environment. We immediately secured our environment and, with the assistance of leading third-party computer forensic specialists, launched an investigation to determine the nature and scope of the incident. On October 4, 2021, the investigation confirmed that certain files on our systems had been subject to unauthorized access.

---

[3]    *See*    https://www.zippia.com/california-pizza-kitchen-careers-17850/#    (last visited Dec. 7, 2021).

**What Information Was Involved?**

Our investigation determined that the information related to you that may have been affected includes your name and Social Security number.

25.    On or about November 19, 2021, Defendant sent data breach notifications to various state Attorneys General, including New Hampshire's Attorney General, signed by Katie Butler at Mullen Coughlin as counsel for Defendant.[4]

26.    Defendant admitted that unauthorized individuals accessed directories that contained PII and was capable of "accessing and acquiring" the PII, names and Social Security Numbers, stating that "that certain files on our systems had been subject to unauthorized access."[5]

27.    However, in neither the Notice of Data Breach nor in the Notice of Data Event to the states' Attorneys General did Defendant state that it had notified law enforcement of the breach at the time it learned of it.

28.    The PII of Plaintiffs and Class Member is, already, upon information and belief for sale on the dark web, and may have already fallen into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiffs and Class Members. Unauthorized individuals can easily access the PII of Plaintiffs and Class Members.

29.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiffs and Class Members, causing the exposure of PII for many current and

---

[4]    *See* https://www.doj.nh.gov/consumer/security-breaches/documents/california-pizza-kitchen-20211119.pdf (last visited Dec. 7, 2021).

[5]    https://oag.ca.gov/system/files/California%20Pizza%20Kitchen%20-%20Sample%20Notice.pdf (last visited Dec. 7, 2021).

former employees, such as encrypting the information or deleting it when it is no longer needed.

30.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[6]

31.    To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless

---

[6]    *See How to Protect Your Networks from RANSOMWARE*, at 3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Dec. 7, 2021).

absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[7]

32.    To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches.

---

[7]    *See id*. at 3-4.

Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus

software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic....[8]

33.    To prevent and detect cyber-attacks or ransomware attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-        Apply latest security updates

-        Use threat and vulnerability management

-        Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

-        Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-        Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-        Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-        Monitor for adversarial activities

-        Hunt for brute force attempts

-        Monitor for cleanup of Event Logs

-        Analyze logon events;

---

[8]    *See* Dept. of Homeland Security, *Security Tip (ST19-001) Protecting Against Ransomware* (original release date Apr. 11, 2019), https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Dec. 7, 2021).

**Harden infrastructure**

- Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[9]

34.    Given that Defendant was storing the PII of its current and former employees, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

35.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII of an undisclosed amount of current and former employees, including Plaintiffs and Class Members.

***Defendant Acquires, Collects, and Stores the PII of Plaintiffs and Class Members***

36.    Defendant has historically acquired, collected, and stored the PII of Plaintiffs and Class Members.

37.    As a condition of maintaining employment with Defendant, Defendant requires that its employees entrust them with highly confidential PII.

38.    By obtaining, collecting, and storing the PII of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

39.    Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to

---

[9]    *See* Microsoft, *Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Dec. 7, 2021).

make only authorized disclosures of this information.

### Securing PII and Preventing Breaches

40.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiffs and Class Members. Alternatively, Defendant could have destroyed the data, especially data from former employees such as Plaintiffs.

41.     Defendant's policies on its website include promises and legal obligations to maintain and protect PII, demonstrating an understanding of the importance of securing PII. For example, Defendant's Privacy Statement provides in part that "We take the security of your information seriously. We use technical and administrative security measures designed to reduce the risks of loss, misuse, unauthorized access, disclosure and alteration."[10]

42.     Defendant's negligence in safeguarding the PII of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

43.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class Members from being compromised.

### Value of Personally Identifiable Information

44.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[11] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or

---

[10]     *See* https://www.cpk.com/legal/privacy-policy (last visited Dec. 7, 2021).
[11]     17 C.F.R. § 248.201 (2013).

identification number, alien registration number, government passport number, employer or taxpayer identification number."[12]

45.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[13] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[15]

46.    Social Security numbers, for example, are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your

---

[12]    17 C.F.R. § 248.201 (2013).

[13]    Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITALTRENDS, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Dec. 7, 2021).

[14]    Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web,* EXPERIAN, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Dec. 7, 2021).

[15]    *In the Dark,* VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Dec. 7, 2021).

credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[16]

47.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

48.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[17]

49.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

50.    This data demands a much higher price on the black market. Martin

---

[16]    Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Dec. 7, 2021).

[17]    Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Dec. 7, 2021).

Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[18]

51.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

52.    The fraudulent activity resulting from the Data Breach may not come to light for years.

53.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may
> be held for up to a year or more before being used to commit identity
> theft. Further, once stolen data have been sold or posted on the Web,
> fraudulent use of that information may continue for years. As a result,
> studies that attempt to measure the harm resulting from data breaches
> cannot necessarily rule out all future harm.[19]

54.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached,

---

[18]    Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, NETWORKWORLD, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Dec. 7, 2021).

[19]    *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last visited Dec. 7, 2021).

including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

55.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

56.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's servers, amounting to potentially thousands of individuals' detailed, PII and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

57.    In the breach notification letter, Defendant made an offer of 12 months of identity monitoring services. This is wholly inadequate to compensate Plaintiffs and Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, medical and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PII.

58.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiffs and Class Members.

59.    The ramifications of Defendant's failure to keep secure the PII of Plaintiffs and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Plaintiff Brett Rigas's Experience***

60.    Plaintiff Rigas was required to provide his PII to Defendant in connection with his employment, which started in or about 2004 and ended in or about 2020.

61.    On or about November 2021, Plaintiff Rigas received notice from Defendant that his PII had been improperly accessed and/or obtained by unauthorized third parties. This notice indicated that Plaintiff Rigas's PII, including name and Social Security Number was compromised as a result of the Data Breach.

62.    Plaintiff Rigas made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to:  researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; reversing fraudulent charges that he believes are due to criminal gaining access to his account via his Social Security Number and contacting services in order to reset passwords. Plaintiff Rigas has spent at least 20 hours dealing with the Data Breach, valuable time Plaintiff Rigas otherwise would have spent on other activities, including but not limited to work and/or recreation.

63.    Additionally, Plaintiff Rigas has been notified by his credit monitoring service since the Data Breach that individuals have attempted to make fraudulent financial transactions in his name.

64.    Furthermore, since the Data Breach, Plaintiff Rigas has noticed a sharp increase in the number of spam texts and calls the he has received on a daily basis. These calls and texts require are a near-constant annoyance and have required time and attention to address as much as possible.

65.    As a result of the Data Breach, Plaintiff Rigas has suffered emotional distress due to the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Rigas is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

66.    Plaintiff Rigas suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to:  (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from

Plaintiff Rigas; (b) violation of his privacy rights; and (c) actual, present, imminent and impending injury arising from the increased risk of identity theft and fraud.

67.     As a result of the Data Breach, Plaintiff Rigas anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Rigas is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### *Plaintiff Evencio Diaz's Experience*

68.     Plaintiff Diaz was required to provide his PII to Defendant in connection with his employment, which started in or about February 2019 and ended in or about March 2020.

69.     On or about November 2021, Plaintiff Diaz received notice from Defendant that his PII had been improperly accessed and/or obtained by unauthorized third parties. This notice indicated that Plaintiff Diaz's PII, including name and Social Security Number, was compromised as a result of the Data Breach.

70.     Plaintiff Diaz made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to:  researching the Data Breach; reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud; and reversing fraudulent charges that he believes are due to criminal gaining access to his account via his Social Security Number. Plaintiff Diaz has spent at least 10 hours dealing with the Data Breach, valuable time Plaintiff Diaz otherwise would have spent on other activities, including but not limited to work and/or recreation.

71.     Furthermore, since the Data Breach, Plaintiff Diaz has noticed a sharp increase in the number of spam texts and calls the he has received on a daily basis. These calls and texts require are a near-constant annoyance and have required time and attention to address as much as possible.

72.    As a result of the Data Breach, Plaintiff Diaz has suffered emotional distress due to the release of his PII, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using his PII for purposes of identity theft and fraud. Plaintiff Diaz is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

73.    Plaintiff Diaz suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to:  (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff Diaz; (b) violation of his privacy rights; and (c) actual, present, imminent and impending injury arising from the increased risk of identity theft and fraud.

74.    As a result of the Data Breach, Plaintiff Diaz anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Diaz is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V. CLASS ALLEGATIONS

75.    Plaintiffs bring this class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, for the following class:

**All individuals residing in the United States whose PII was compromised in the data breach first announced by Defendant on or about November 15, 2021 (the "Class").**

76.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as

their immediate family members.

77.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

78.    <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. The Class is apparently identifiable within Defendant's records. A notification to the Maine Attorney General indicates that the size of the Class is at least 103,767 individuals.[20]

79.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

a.  Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

b.  Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c.  Whether Defendant had a duty not to use the PII of Plaintiffs and Class Members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

---

[20]  *See*  https://apps.web.maine.gov/online/aeviewer/ME/40/ea812f00-c605-4b8e-a6e2-9dd53169b256.shtml (last visited Dec. 7, 2021).

information compromised in the Data Breach;

i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k.   Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

80.   <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because they had their PII compromised as a result of the Data Breach due to Defendant's misfeasance.

81.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

82.   <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the

1   Members of the Class and the infringement of the rights and the damages they have

2   suffered are typical of other Class Members. Plaintiffs have retained counsel

3   experienced in complex class action litigation, and Plaintiffs intend to prosecute this

4   action vigorously.

5       83.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class

6   litigation is an appropriate method for fair and efficient adjudication of the claims

7   involved. Class action treatment is superior to all other available methods for the fair

8   and efficient adjudication of the controversy alleged herein; it will permit a large

9   number of Class Members to prosecute their common claims in a single forum

10  simultaneously, efficiently, and without the unnecessary duplication of evidence,

11  effort, and expense that hundreds of individual actions would require. Class action

12  treatment will permit the adjudication of relatively modest claims by certain Class

13  Members, who could not individually afford to litigate a complex claim against a

14  large corporation, like Defendant. Further, even for those Class Members who could

15  afford to litigate such a claim, it would still be economically impractical and impose

16  a burden on the courts.

17      84.    The nature of this action and the nature of laws available to Plaintiffs

18  and Class Members make the use of the class action device a particularly efficient

19  and appropriate procedure to afford relief to Plaintiffs and Class Members for the

20  wrongs alleged because Defendant would necessarily gain an unconscionable

21  advantage since it would be able to exploit and overwhelm the limited resources of

22  each individual Class Member with superior financial and legal resources; the costs

23  of individual suits could unreasonably consume the amounts that would be

24  recovered; proof of a common course of conduct to which Plaintiffs were exposed

25  is representative of that experienced by the Class and will establish the right of each

26  Class Member to recover on the cause of action alleged; and individual actions

27  would create a risk of inconsistent results and would be unnecessary and duplicative

28  of this litigation.

85.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

86.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

87.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

88.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

89.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

   a.  Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

   b.  Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

   c.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

   d.  Whether an implied contract existed between Defendant on the one

hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e. Whether Defendant breached the implied contract;

f. Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i. Whether Class Members are entitled to actual damages, statutory damages, nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiffs and the Class)

90. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 89.

91. As a condition of their employment with Defendant or by purchasing goods from Defendant, Defendant's current and former employees and customers were obligated to provide Defendant with PII, among other sensitive PII, their names and Social Security Numbers.

92. Plaintiffs and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

93. Defendant has full knowledge of the sensitivity of the PII and the types

of harm that Plaintiffs and the Class could and would suffer if the PII were wrongfully disclosed.

94.   Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

95.   Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiffs and the Class in Defendant's possession was adequately secured and protected.

96.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PII that Defendant was no longer required to retain pursuant to regulations.

97.   Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiffs and the Class.

98.   Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII, a necessary part of employment with the company or making purchases from Defendant.

99.   Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Class.

100.   A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

101.   Plaintiffs and the Class were the foreseeable and probable victims of

any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting or redacting PII stored on Defendant's systems.

102.   Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PII of Plaintiffs and the Class, including basic encryption techniques freely available to Defendant.

103.   Plaintiffs and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

104.   Defendant was in a position to protect against the harm suffered by Plaintiffs and the Class as a result of the Data Breach.

105.   Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiffs and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

106.   Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Class.

107.   Defendant has admitted that the PII of Plaintiffs and the Class was wrongfully lost and potentially disclosed to unauthorized third persons as a result of the Data Breach.

108.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and the

Class during the time the PII was within Defendant's possession or control.

109. Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

110. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Class in the face of increased risk of theft.

111. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' PII.

112. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Class the existence and scope of the Data Breach.

113. But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Class, the PII of Plaintiffs and the Class would not have been compromised.

114. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiffs and the Class and the present harm, or risk of imminent harm, suffered by Plaintiffs and the Class. The PII of Plaintiffs and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

115. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

116. Defendant violated Section 5 of the FTC Act by failing to use

reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class.

117. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

118. Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

119. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

120. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Class; and (viii) costs in terms of

time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

121. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

122. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

123. Plaintiffs and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## COUNT II
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiffs and the Class)**

124. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 89.

125. Defendant required Plaintiffs and the Class to provide their PII, including names and Social Security numbers, and other PII, as a condition of their employment.

126. As a condition of their employment with or purchases from Defendant, Plaintiffs and the Class provided their PII. In so doing, Plaintiffs and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and

confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been breached and compromised or stolen.

127.   Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

128.   Defendant breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

129.   As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

### COUNT III
### INVASION OF PRIVACY
### (On Behalf of Plaintiffs and the Class)

130.   Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 89.

131.   Plaintiffs and the Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

132.   Defendant owed a duty to its current and former customers and employees, including Plaintiffs and the Class, to keep their PII confidential.

133.   Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiffs and the Class.

134.   Defendant allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiffs and the Class, by way of Defendant's failure to protect the PII.

135.   The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiffs and the Class is highly offensive to a reasonable person.

136.   The intrusion was into a place or thing which was private and is entitled to be private. Plaintiffs and the Class disclosed their PII to Defendant as part of the current and former employees' employment with Defendant and/or during a consumer transaction with Defendant, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

137.   The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

138.   Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

139.   Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Class.

140.   As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiffs and the Class was disclosed to third parties without authorization, causing Plaintiffs and the Class to suffer damages.

141.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

**COUNT IV**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiffs and the Class)**

142.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 89.

143.    At all times during Plaintiffs' and the Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and the Class's PII that Plaintiffs and the Class provided to Defendant.

144.    As alleged herein and above, Defendant's relationship with Plaintiffs and the Class was governed by terms and expectations that Plaintiffs' and the Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

145.    Plaintiffs and the Class provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

146.    Plaintiffs and the Class also provided Plaintiffs' and the Class's PII to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect that PII from unauthorized disclosure.

147.    Defendant voluntarily received in confidence Plaintiffs' and the Class's PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

148.   Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and the Class's PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and the Class's confidence, and without their express permission.

149.   As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and the Class have suffered damages.

150.   But for Defendant's disclosure of Plaintiffs' and the Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiffs' and the Class's PII as well as the resulting damages.

151.   The injury and harm Plaintiffs and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and the Class's PII. Defendant knew or should have known its methods of accepting and securing Plaintiffs' and the Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and the Class's PII.

152.   As a direct and proximate result of Defendant's breach of its confidence with Plaintiffs and the Class, Plaintiffs and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized

disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former customers and employees; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Class.

153.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Class)

154.    Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 89.

155.    Defendant benefited from receiving Plaintiffs' and Class Members' PII by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

156.    Defendant also understood and appreciated that Plaintiffs' and Class Members' PII was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

157.    Plaintiffs and Class Members conferred a monetary benefit upon Defendant in the form of their employment and by purchasing goods from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII. In exchange, Plaintiffs and Class members

should have received adequate protection and data security for such PII held by Defendant.

158. Defendant knew Plaintiffs and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiffs and Class Members for business purposes.

159. Defendant failed to provide reasonable security, safeguards, and protections to the PII of Plaintiffs and Class Members.

160. Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and Class members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

161. Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

162. Defendant's enrichment at the expense of Plaintiffs and Class Members is and was unjust.

163. As a result of Defendant's wrongful conduct, as alleged above, Plaintiffs and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, as defined herein, and appointing Plaintiffs and their Counsel to represent each such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and

1    Class Members;

2    C.    For injunctive relief requested by Plaintiffs, including but not limited
3          to, injunctive and other equitable relief as is necessary to protect the
4          interests of Plaintiffs and Class Members, including but not limited to
5          an order:

6          i.    prohibiting Defendant from engaging in the wrongful and unlawful
7                acts described herein;

8          ii.   requiring Defendant to protect, including through encryption, all
9                data collected through the course of its business in accordance with
10               all applicable regulations, industry standards, and federal, state or
11               local laws;

12         iii.  requiring Defendant to delete, destroy, and purge the personal
13               identifying information of Plaintiffs and Class Members unless
14               Defendant can provide to the Court reasonable justification for the
15               retention and use of such information when weighed against the
16               privacy interests of Plaintiffs and Class Members;

17         iv.   requiring Defendant to implement and maintain a comprehensive
18               Information    Security    Program    designed    to    protect    the
19               confidentiality and integrity of the PII of Plaintiffs and Class
20               Members;

21         v.    prohibiting Defendant from maintaining the PII of Plaintiffs and
22               Class Members on a cloud-based database;

23         vi.   requiring Defendant to engage independent third-party security
24               auditors/penetration testers as well as internal security personnel to
25               conduct testing, including simulated attacks, penetration tests, and
26               audits on Defendant's systems on a periodic basis, and ordering
27               Defendant to promptly correct any problems or issues detected by
28               such third-party security auditors;

     vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

    viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

     ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

     x.   requiring Defendant to conduct regular database scanning and securing checks;

     xi.   requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

    xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this matter be tried before a jury.

DATED: December 7, 2021                    Respectfully Submitted,

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**

By:    _____/s/ Rachele R. Byrd_____
        RACHELE R. BYRD

BETSY C. MANIFOLD
RACHELE R. BYRD
ALEX TRAMONTANO
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiffs and
the Proposed Class*

27902